UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

GAYLE L. GAMMICCHIA,
    Plaintiff,

vs.                                                  CIVIL NO. 2:07-CV-12097

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,    HON. MARIANNE O. BATTANI
    Defendant                                MAG. JUDGE. STEVEN D. PEPE
_____/

**REPORT AND RECOMMENDATION**

**I.    BACKGROUND**

Gayle L. Gammicchia brought this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision that Plaintiff was not entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act as of November 10, 2002. Both parties have filed motions for Summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

    **A.    Procedural History**

On October 6, 2003, Plaintiff applied for DIB alleging disability since November 10, 2002, based on ailments including brain seizures, fibromyalgia, osteoporosis and arthritis (R. 96). After Plaintiff's claim was denied upon initial review on January 7, 2004, an administrative hearing was held on April 25, 2006, before Administrative Law Judge (ALJ) Janice Bruning, at which Plaintiff was represented by attorney, Edward M. Waud (R. 503-529). Vocational Expert

1

(VE) James V. Lozer also testified. On August 14, 2006, ALJ Bruning decided Plaintiff was not disabled from November 10, 2002 through the date of the decision, because despite her impairments, she could perform a limited but significant number of light work jobs identified by the vocational expert Lozer (R. 25). This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (R. 5-7).

B. **Background Facts**

1. *Plaintiff's Testimony and Statements*

Plaintiff was 43 years old at the time of her November 10, 2002, alleged onset of disability (R. 24). Her last date of insured status was December 31, 2007 (R. 18). Plaintiff has a high school education and some college education in the field of food service with work experience in the field (R. 504-5). Plaintiff testified that she was no longer able to work because of the fibromyalgia and seizures (R. 508).

At the hearing, Plaintiff described her daily activities during the relevant period (R. 514-520). She testified that she prepared simple meals like hamburgers and frozen entrees; loaded and unloaded the dishwasher, scrubbing pans separately; did laundry, folding it and placing it in the basket; watched television every day; read novels; chatted with a friend in Colorado via email; and took care of her three cats and two dogs by feeding them and giving them water.

Plaintiff described her pain to be constant whether she was lying, sitting or walking, explaining that even during her testimony she was in severe pain, it was "killing" her (R. 508 and 512). Because she suffered from three to four seizures per month losing consciousness, her medication was recently increased showing signs of controlling the disorder (R. 508). Her seizures are precipitated by a migraine headache that continues even after a seizure requiring her

to stay in bed for an entire day (R. 521-2).

Plaintiff also suffers from irritable bowel syndrome with incidents of four to five times a month requiring urgent trips to the bathroom (R. 520). Over the counter medication seems to help control the symptoms (R. 520-1).

In regards to her alcohol consumption, Plaintiff testified that she had quit drinking about four months prior to the hearing without any counseling or treatment program such as Alcoholics Anonymous (R. 510-1).

### 2. *Medical Evidence*

On September 19, 2002, Plaintiff underwent an examination by Eva T. Satell, M.D., a rheumatologist regarding pain symptoms with a question of fibromyalgia (R. 193-4). Other than finding trigger point tenderness consistent with fibromyalgia, there were no findings of restriction of motion in any joints or spine. Lab results failed to reveal any connective tissue disease and an examination of X-rays of the Plaintiff's left shoulder and spine were normal. The doctor noted that Plaintiff had a history of alcoholism consuming three to six beers on a work day and twelve beers a day when at home (R. 193).

On August 1, 2003, Plaintiff was seen at William Beaumont Hospital by Michael Margolis, M.D. and Mazen Al-Hakim, M.D., a neurologist, because of a seizure (R. 197-210). The neurological examination was normal ruling out such disorders as epilepsy. Dr. Al-Hakim concluded that the new onset seizure was most likely attributable to alcohol (R. 199).

On October 13, 2003, Gary L. Lingaur, M.D., saw Plaintiff as a follow up to the emergency room visit to Beaumont Hospital (R. 296-7). He concluded that there was no known seizure disorder. He noted that Plaintiff was an alcoholic explaining to Plaintiff and her husband

3

that seizures can be fatal. Despite this admonishment, Plaintiff continued to drink against medical advice with no plans to decrease her consumption.

On December 12, 2003, Douglas Halgren, Ph.D., provided his mental assessment of Plaintiff for the Michigan Determination Service(R. 259-263). He noted that Plaintiff reported her primary problem was the seizures with secondary problems with arthritis, osteoporosis, thyroid, deviated nasal passage and fibromyalgia (R. 259). On Axis I of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), Dr. Halgren diagnosed Plaintiff as suffering from an adjustment disorder with anxiety (R. 262). On Axis V of the DSM, he estimated her global assessment of function (GAF) to be at 65, which indicates "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships" American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* (4th ed. 1994).

Christopher Milan, D.O., Plaintiff's treating physician referred her for bone density testing in March of 2002 and May of 2004. The results indicated significant osteoporosis in the lumbar spine and hips (R. 362-374). In July of 2003, a month prior to Plaintiff's visit to Beaumont Hospital, Dr. Milan diagnosed her with hypothyroidism, soft tissue disorder, hypertension, osteoporosis and elevated liver enzyme caused most likely by excessive alcohol use or medication related, with no notation of a seizure disorder. (R. 305-7). On February 11, 2004, Dr. Milan noted Plaintiff's alcohol dependence and the necessity to lower consumption to lower the seizure threshold (R. 292).

On October 1, 2005, Plaintiff's treating neurologist, Steven Huder, M.D., completed a medical assessment of her ability to perform work-related activities and a mental work

4

assessment (R. 350-357). He found that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally; could stand and/or walk for seven hours in an eight-hour workday and had no limitations on the use of her hands. Further, Dr. Huder stated Plaintiff should avoid unprotected heights and moving machinery. He concluded that Plaintiff had good or fair mental abilities and would likely only be absent from work about once a month.

In March of 2006, Charles J. Huebner, M.D., performed a new patient examination of Plaintiff. He assessed that Plaintiff suffered from chronic pain, fibromyalgia syndrome and overall ill health/habits (R. 484 - 494). He concluded that Plaintiff was in the best position to help herself rather than physician or pharmacological intervention (R. 484).

### 3. *Vocational Evidence*

VE Lozer described Plaintiff's two past cashier positions one was light and unskilled work and the other cashier position was medium and semi-skilled work (R. 525).

ALJ Bruning posed the following hypothetical to VE Lozer – assume an individual of the same age, education, and work experience as the Plaintiff, with the following limitations: the individual can lift up to 20 pounds occasionally and 10 frequently; she can stand and/or walk up to six hours in an eight hour work day and up to one hour at a time; the individual can occasionally stoop, kneel, crouch and climb ramps and stairs and frequently balance; no climbing of ladders, ropes, or scaffolds; and no work at unprotected heights or around hazardous machinery.

VE Lozer stated that he did believed that such an individual could perform Plaintiff's

5

past relevant work as a cashier at the light, unskilled level or at the sedentary and light semi-skilled level.

ALJ Bruning asked a permutation of the above hypothetical question incorporating Dr. Huber's findings of: an individual of the same age, education, and work experience as the Plaintiff, who can sit, stand or walk for a total of seven hours during an eight-hour work day; continuously lift five pounds, frequently lift ten pounds and occasionally lift twenty pounds; no limitations with the hands; who can frequently bend, twist, reach above shoulder level; squat, kneel, crouch, crawl and stoop; occasionally climb stairs but has balance problems; and who should never climb ladders, avoid unprotected heights and moving machinery. When ALJ Bruning added the limit of work with one- or two-step tasks, VE Lozer did not believe that such a worker could perform any of the past relevant work, but that she could perform work as an assembler, dishwasher and custodian. Approximately 16,000 of these jobs exist in the State of Michigan (4,000 dishwashing jobs and 8,000 custodial jobs) (R. 527).

If a worker needed to be absent for three days per month that would eliminate full-time competitive employment (R. 528-9).

### 4. *ALJ Bruning's Decision*

ALJ Bruning found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2007, and that she had not engaged in substantial gainful activity since her alleged onset date of November 10, 2002 (R. 20). She found that Plaintiff's status seizure disorder, fibromyalgia, osteoporosis and adjustment disorder were a "severe" impairments within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4

(R. 20). She found the irritable bowel syndrome and anxiety disorder not be severe within the meaning of the Regulations. The irritable bowel syndrome was related to Plaintiff's poor diet and alcohol that could be relieved by over-the-counter medication, abstinence from alcohol and better dietary habits (R. 20-1). In regards to Plaintiff's anxiety, at the hearing Plaintiff testified that, while she does worry about things, she was never diagnosed with this disorder nor was there medical evidence in the record to support such a diagnosis (R. 21)

ALJ Bruning found that Plaintiff retained the RFC to perform a restricted range of light work with the ability to sit, walk and stand for 6-8 hours a day, occasional lifting of up to 20 pounds and unskilled work involving simple one to two steps tasks (R. 21). Considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform (R. 24).

The ALJ found that Plaintiff's allegations regarding her pain and functional limitations were not totally credible (R. 21-2). It is this portion of the ALJ's opinion that forms the core of Plaintiff's complaint in this case. ALJ Bruning found that Plaintiff's denial of alcohol abuse and her statements that she had quite drinking without any type of program or treatment were not credible. The medical records were replete with references to alcohol abuse and the effects of the abuse. Further, the ALJ found her estimation of pain level exaggerated in that she indicated that she was in severe pain during the hearing but at no time did the ALJ observe the Plaintiff to show any signs of discomfort (R. 22). And finally, the ALJ found that the Plaintiff's unhealthy lifestyle was the chief contributor to her own problems (R. 24).

**II.    Analysis**

In his motion for summary judgment, Plaintiff argued that (1) ALJ Bruning improperly

assessed Plaintiff's credibility, effects, symptoms and limitations of fibromyalgia and complaints of pain; (2) ALJ Bruning improperly assessed the effects of Plaintiff's depression; (3) ALJ Bruning failed to give proper weight to the opinions and assessments made by the Plaintiff's treating physicians; (4) The ALJ failed to pose complete and accurate hypothetical questions to the vocational expert; and (5) The ALJ's decision was not supported by substantial evidence (Dkt. # 9).

### A. **Standards of Review**

Plaintiff must establish that she became disabled under Title II of the Act prior to March 31, 2003, the date her insured status expired. *See* 42 U.S.C. § 416(I); 20 C.F.R. §§ 404.131(a), 404.320(b)(2); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment(s) must be of such severity that the individual can neither do her previous work nor engage in any other kind of substantial gainful work which exists in the national economy, considering her age, education, and work experience. *See id.* § 423(d)(2)(A).

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)). The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. *Id.* If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In determining the existence of substantial evidence, it is not the function of a federal court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry the burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects. A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform. *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may

9

constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

B.     **Factual Analysis**

   **I. Plaintiff's Credibility at Issue**

Plaintiff challenges the Commissioner's decision arguing that the ALJ's credibility finding is not supported by the record because it fails to adequately assess Plaintiff's subjective estimation of her pain and limitations due to fibromyalgia and depression. Subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)) (*See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Secretary,* 801 F.2d 847, 852 (6th Cir. 1986) (Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain). The issue of a claimant's credibility regarding subjective complaints is largely within the scope of the ALJ's fact finding discretion – the Commissioner's "zone of choice" – if adequately explained and supported by the record.

The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ must, however, do more than say

the testimony is not credible based on generalities or merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994). In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.

### a. Fibromyalgia

ALJ Bruning had substantial evidence to discredit Plaintiff's testimony. ALJ Bruning measured Plaintiff's testimony against the objective medical evidence, the claimant's daily activities, the location, duration, frequency and intensity of her pain, precipitating and aggravating factors, use of medications, treatment other than medications, other measures used to relieve pain and direct observations of the Plaintiff during the hearing (R. 21-24). Based on her comparison of her claims with the above mentioned factors, ALJ Bruning found Plaintiff's testimony not "entirely credible." (R. 21). She noted that despite alleging severe pain during the hearing at no time did Plaintiff exhibit any signs of being uncomfortable (R. 22). The 28-minute hearing exceeded Plaintiff's asserted fifteen minute self-imposed limitation on sitting (R. 512). There was no objective evidence or treatment notes from the Plaintiff's treating physician to support Plaintiff's allegation of severe pain that would limit her sitting for a maximum of fifteen minutes. Furthermore, the only evidence of the fibromyalgia in the record was the subjective findings of trigger point tenderness. All physical examinations revealed normal ranges of

11

motion of all joints and in the spine and no neurological abnormalities.  None of the physicians opined that the condition severely limits Plaintiff.  Considering all of the evidence, while being cognizant of the subjective nature of fibromyalgia, the ALJ concluded that the record does not disclose any basis which would support a finding that Plaintiff has any significant limitation which would prevent her from performing light work.

ALJ Bruning also found Plaintiff's allegations of disabling pain and other symptoms undermined by Plaintiff's assertion that she quit consuming alcohol four months prior to the hearing without the assistance of treatment or counseling.  Plaintiff's long history of alcohol abuse was well documented by the various physicians of record including her treating physicians, Dr. Milan and Dr. Huber, with side effects contributing to her seizure disorder, irritable bowel syndrome and overall well being .  Given the leading role alcohol plays in the Plaintiff's life, the ALJ  felt that it was unlikely that Plaintiff could simply quit on her own without support.

Because ALJ Bruning properly discredited Plaintiff's testimony, Plaintiff's assertion that ALJ Bruning erred when she disregarded Plaintiff's subjective complaints of pain as a result of fibromyalgia  is without merit.

### b. Depression

In regards to Plaintiff's contention that the ALJ failed to properly assess Plaintiff's depression and its associated effects, it must first be noted that there was no claim made by Plaintiff to consider depression as an impairment (R. 84,103,108, 111-12)..  It is well settled law that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible

12

argument in the most skeletal way, leaving the court to...put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

There are two references to mental impairments in the record: anxiety disorder and adjustment disorder with anxiety. The two impairments are medically distinct. An Adjustment Disorder is a psychological response to an identifiable stressor whereas an Anxiety Disorder lacks the presence of a stressor. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* diagnostic code 300.00 and 309.24 (4th ed. 1994). In regards to Plaintiff's alleged Anxiety Disorder, there was neither a diagnosis nor medical evidence of record supporting the diagnosis. As such, ALJ Bruning found the impairment not to be severe. Dr. Halgren, as part of the mental assessment at the request of the DDS, found there to be an adjustment disorder with anxiety (R. 259-263). Dr. Halgren assessed Plaintiff's global functioning at a 65, which indicates someone who generally functions pretty well, a conclusion the ALJ noted in her opinion (R. 22). Dr. Halgren also found that Plaintiff had some difficulty with immediate memory and attending skills. The RFC, as ascertained by the ALJ, took into account the mild limitations determined by Dr. Halgren restricting Plaintiff's work to simple one to two step tasks.

ALJ Bruning's reasons for discrediting Plaintiff's complaints of disablement due to depression or other mental ailment pain are supported by the record. Therefore, it is recommended that ALJ Bruning's credibility determination not be overturned.

    *ii. Plaintiff's treating physician*

13

Plaintiff argues that the diagnosis of fibromyalgia by her treating physician is dispositive in finding that she was entitled to benefits. It is well established that the findings and opinions of treating physicians are entitled to substantial weight. The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527. The Commissioner will only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d); *See also*, S.S.R. 96-2p.

Yet, the conclusion of whether a claimant is "disabled" is a decision reserved to the Commissioner to decide (R. 19). 20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2). And, "[w]e will not give any special significance to the source of an opinion on an issue reserved to

the Commissioner." *Id*. at §§ 404.1527(e)(3), 416.927(e)(3). Here, the ALJ reasonably noted that Dr. Milan's treatment and examination records did not contain objective clinical and laboratory documentation of a medical condition that could reasonably be expected to result in disabling symptoms and limitations. Lacking such findings, it was reasonable for the ALJ to observe that Dr. Milan's conclusory opinions appeared to be based primarily upon Plaintiff's subjective allegations, which the ALJ found not fully credible (R. 20). *See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995).

An impairment alone does not entitle a claimant to benefits; rather, it is the limitations caused by the impairment which are dispositive. It is especially important in cases involving a subjective based diagnosis like fibromyalgia, "since fibromyalgia is not always (indeed, not usually) disabling." *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Given the nature of fibromyalgia, and Plaintiff's complaints of disabling pain from that condition, the primary issue for the ALJ was one of credibility. "[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant." *Villarreal v. Secretary of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (per curiam) (internal quotation omitted). And, in addressing this question, the ALJ was permitted to consider the objective medical findings in the record, for "[w]hile the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analyses." *Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 16 n.5 (1st Cir. 2003) (suit for benefits under ERISA).

As discussed above, substantial evidence supports the ALJ's conclusion that Plaintiff's

complaints of disabling pain were not fully credible. Accordingly, the ALJ's discounting of her treating physician's opinion based primarily on Plaintiff's subjective statements should not be overturned.

### *iii. Hypothetical Question posed to Vocation Expert*

Plaintiff claims that the ALJ asked the VE an incomplete hypothetical question because she never included all of Plaintiff's impairments and limitations. The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To meet the burden of showing that Plaintiff could perform work that is available in the national economy, the Commissioner must make a finding "supported by substantial evidence that [he] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [his] individual physical and mental impairments.'" *Id.* (citations omitted).

Contrary to Plaintiff's claim, the hypothetical questions the ALJ asked the VE, and the corresponding answers the ALJ relied on, were adequate and proper because the hypothetical relied on included all of Plaintiff's substantiated impairments and resultant limitations. The ALJ may pose hypothetical questions to the VE which include only those limitations which the ALJ finds credible. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff's challenge to the hypothetical question is based in part on the ALJ's credibility finding discrediting Plaintiff's subjective estimation of her pain. For the reasons stated above,

the ALJ had substantial evidence to reject the degree to which Plaintiff was limited by alleged pain.

Therefore, ALJ Bruning in her questions to VE Lozer adequately described Plaintiff's physical condition. The ALJ proffered a hypothetical individual who was limited to work that involved sitting, standing or walking for a total of seven hours during an eight-hour work day, continuously lifting five pounds, frequently lifting ten pounds and occasionally lifting twenty pounds, no limitations with the hands, who can frequently bend, twist, reach above shoulder level, squat, kneel, crouch, crawl and stoop, occasionally climb stairs but has balance problems, should never climb ladders, avoid unprotected heights and moving machinery and perform work with one- or two-step tasks. VE Lozer testified that an individual of Plaintiff's age, education, and work history with those limitations could perform jobs as an assembler, dishwasher and custodian. Approximately 16,000 of these jobs exist in the State of Michigan (4,000 dishwashing jobs and 8,000 custodial jobs) (R. 527).

Based on the testimony of VE Lozer, a reasonable ALJ could conclude that there existed sufficient jobs which Plaintiff could perform even though she could not engage in any of her past relevant work. Therefore, it is recommended that ALJ Bruning's hypothetical question not be overturned.

## III.    RECOMMENDATION

For the reasons stated above there is substantial evidence supporting ALJ Bruning's decision. IT IS RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED. Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of

service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

*Note:* any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: March 24, 2008     s/Steven D. Pepe
Ann Arbor, Michigan     United States Magistrate Judge


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Report and Recommendation** was served on the

attorneys and/or parties of record by electronic means or U.S. Mail on March 24, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298
